No. 652

First Circuit

—  —

LAVERGNE ET AL. v. PARISH OF JEFFERSON DAVIS

———

(June 9, 1930. Opinion and Decree.)

———

John B. Fournet, of Jennings, attorney for plaintiffs, appellees.

John J. Robira, of Lake Charles, district attorney, for defendant, appellant.

MOUTON, J. In obedience to notification from the proper authorities of the defendant parish, plaintiffs drove 77 head of cattle to the Bardell Vat, where they were dipped for the eradication of ticks, on January 27, 1928. Plaintiffs claim that 9 head in the bunch of cattle dipped were

injured in the process of dipping, or as a result thereof, and are suing the defendant parish for their value under provisions of Act No. 56 of 1918.

Judgment was rendered in favor of plaintiffs for their value, from which the parish prosecutes this appeal.

The proof is that the cattle were driven a distance of about two miles to the dipping vat; that the weather was cold, that they were carefully driven, and were not in the least overheated. It is equally certain that they were driven back, after the dipping, with equal care, and in the same condition. It is clearly established that if cattle are properly handled, before and after dipping as these were, there is no danger of injury to them by absorption of the solution used in the dipping vats.

It is true that the cattle were extremely thin or emaciated but it is shown by Holbert, state inspector for eradication work, and who supervised the dipping in the instant case, that, as the cattle were able to walk a couple of miles going to the vat and returning to their pasture, they could stand the dipping. It is therefore evident that, if they were injured as contended for by plaintiffs, their extreme thinness, nor any overheated condition, either before or after the dipping, could have been the cause of their injury or death. It is shown, however, that after the dipping the 9 head sued for had scratched, swollen, cracked skins and swollen legs. Among other symptoms of toxic poisoning from dipping, it is shown that there is a cracking of the skin after a few hours or maybe several days.

Hatfield, a cattle inspector, witness for defendant, says that the handling of cattle before or after the dipping is what kills them; and, if that is not the cause, it must be ascribed to the solution.

Holbert, who conducted the dipping operation, says his solution tested 17 per cent., being 1 per cent. above the minimum permitted under the governmental regulations. He testifies that by dipping cattle in solution of that character no injury can result.

It is shown however, that, before cattle are driven in the vat, the solution must be thoroughly stirred and mixed so as to protect them from absorbing the poisonous ingredients intended for the destruction of the ticks. Holbert says that he had stirred the solution as required before these cattle were dipped.

In that respect Holbert is contradicted by Joe Lavergne, Phil Lavergne, and Delmar Carrie. Joe Lavergne says that Holbert first stirred the solution, poured some more, and then ran the cattle into the vat, while Philip Lavergne says that he poured solution in the vat, then some more and drove the cattle in to stir it up. It is well established by the record that the injury to the cattle did not result from being overheated when they were dipped or thereafter when they were driven back to pasturage, nor from their thin or emaciated condition, as above stated.

It therefore appears, as the testimony shows, that they were killed by the effects of the solution, as was clearly indicated by the breaking of their skins, the usual symptom of toxic poisoning, as explained by Dr. Quilty, expert witness for defendant. Such being the situation, the only logical inference to be drawn from the evidence is that lack of sufficient dilution of the solution by proper stirring caused the 9 head to receive a larger dose of the poisonous ingredient than they

could stand, which resulted in their death a few days after the dipping.

As it appears that there was no contributory negligence on the part of plaintiffs, owners of the cattle, and that they were killed as a result of the dipping, judgment was properly rendered for plaintiffs, under the provisions of Act 56 of 1918.